UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ALBERT ELIEZER MARTINEZ,         :

    Plaintiff               :   CIV. ACTION NO. 1:23-CV-1056

v.                                :        (JUDGE MANNION)

ROSSMAN, *et al.*,                :

    Defendants              :

## MEMORANDUM

Presently before the court in this prisoner civil rights case is defendants' motion for summary judgment. For the reasons set forth below, the motion will be granted, and this case will be closed.

**I.** **BACKGROUND**

Plaintiff, Albert Eliezer Martinez, filed this case on June 26, 2023, alleging generally that defendants, employees at Mahanoy State Correctional Institution ("SCI-Mahanoy"), violated his rights to due process and equal protection by firing him from his prison job after he asked his supervisor not to call him "Bin Laden." (Doc. 1). The case was initially assigned to United States District Judge Christopher C. Conner. On July 5, 2023, Judge Conner dismissed all claims against defendant Mason for failure to allege personal involvement, but otherwise ordered service of

process on the defendants. (Doc. 6). Defendants[1] answered the complaint on August 31, 2023. (Doc. 11). Defendants filed the instant motion for summary judgment on July 31, 2024. (Doc. 29). Briefing on the motion is complete, and it is ripe for resolution. (*See* Docs. 34, 39, 45).[2]

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file]

---

[1] Because Mason has been dismissed from this case, the court will refer to the remaining defendants simply as "defendants" throughout the remainder of this opinion.

[2] After defendants filed their reply brief on March 20, 2025, they filed a letter to the court in which they suggest that plaintiff's claims may be barred by a settlement in a previous case that was also before Judge Conner, *Martinez v. Mason*, No. 1:21-CV-1485 (M.D. Pa. closed Apr. 19, 2024). (Doc. 46). Defendants request a status conference to discuss this issue because the specific terms of the settlement are confidential. (*Id.*)

Because the court concludes below that defendants are entitled to summary judgment on other bases, the court will not conduct a status conference or address this issue in the interest of judicial economy. Additionally, based on the court's review of the other case, it appears unlikely that the claims at issue in the instant case were subject to the parties' settlement agreement. Before the parties settled the other case, Judge Conner issued a memorandum and order on June 1, 2023, that, *inter alia*, dismissed the claims that are at issue in this lawsuit as misjoined to the other claims in the case pursuant to Federal Rules of Civil Procedure 20 and 21. *See Martinez*, No. 1:21-CV-1485, Docs. 53-54. The dismissal was without prejudice to Martinez filing a new lawsuit asserting the claims. *See id.* Martinez then filed the instant case on June 26, 2023, (*see* Doc. 1), several months before the parties sought dismissal of the other case based on their settlement in early 2024. *See Martinez*, No. 1:21-CV-1485, Docs. 58-61.

2

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge that burden by showing that "on all the essential elements of

its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

### III. MATERIAL FACTS[3]

Martinez was incarcerated in SCI-Mahanoy at all relevant times. (Doc. 33 ¶6; Doc. 40 ¶6). In early 2021, he was hired to work in SCI-Mahanoy's commissary shop. (Doc. 33 ¶8; Doc. 40 ¶8). Martinez was responsible for pulling items from the store and packing them for delivery to other inmates. (Doc. 33 ¶9; Doc. 40 ¶9). Martinez was eventually promoted to be a "floater," which required him to perform a variety of roles in the commissary, including clerk, janitor, scanner operator, shelf stocker, and cardboard collector. (Doc. 33 ¶¶ 10-11; Doc. 40 ¶¶ 10-11). Martinez was also tasked with scanning items and loading them into bags. (Doc. 33 ¶12; Doc. 40 ¶12).

Defendant Rossman served as Martinez's supervisor in the commissary warehouse. (Doc. 33 ¶13; Doc. 40 ¶13). Martinez described Rossman as a "playful guy" who "liked to joke around with inmates." (Doc. 33 ¶14; Doc. 40 ¶14). On January 31, 2022, Martinez was suspended from

---

[3] Local Rule 56.1 requires a motion for summary judgment to "be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried" and requires that the party opposing a motion for summary judgment file a statement responding to the numbered paragraphs in the movant's statement of material facts, which "shall include references to the parts of the record" that support the nonmovant's opposition to the motion. M.D. Pa. L.R. 56.1. The facts in this section are derived from the parties' Rule 56.1 statements. (*See* Docs. 33, 40).

5

his job based on a report that he was stealing items from the commissary. (Doc. 33 ¶15; Doc. 40 ¶15; Doc. 33-2 at 2;[4] Doc. 1-2 at 1). Martinez was fired on February 8, 2022, after prison staff conducted a support team hearing to discuss the allegations of theft. (Doc. 33 ¶16; Doc. 40 ¶16).[5] Martinez was not present at the support team hearing. (Doc. 33 ¶17; Doc. 40 ¶17).

On February 4, 2022, Martinez filed a grievance alleging that defendant Rossman removed him from his job without cause and because he had asked Rossman not to call him "Bin Laden." (Doc. 33 ¶21; Doc. 40 ¶21; Doc. 1-2 at 15). On February 18, 2022, defendant Roxby denied the

---

[4] This exhibit is dated April 9, 2024, rather than the date it was purportedly issued, January 31, 2022. (See Doc. 33-2 at 2). Defendants have produced a response to a request for production of documents that they served to plaintiff, wherein defendants' counsel explains that the software used by the DOC for document retention automatically printed the document with the date on which it was printed and that an original of the document with the correct date could not be printed. (Doc. 33-2 at 4). Plaintiff disputes the authenticity of this document, (see Doc. 40 ¶ 15), but the initial review response to plaintiff's administrative grievance complaining about his firing—which plaintiff attached to his complaint—corroborates defendants' factual contention that plaintiff was suspended from his prison job based on suspicion that he was stealing items from the commissary. (See Doc. 1-2 at 1). The court accordingly treats as undisputed the fact that plaintiff was suspended from his job based on suspicions that he was stealing items. This conclusion shall not be treated as a finding that Doc. 33-2 is authentic because the other evidence in the record makes such a finding unnecessary.

[5] Martinez states that he is denying this factual contention, but he states in the next paragraph in his statement that he was not present for the support team meeting. Accordingly, the court treats as undisputed the contention that the support team meeting occurred on February 8, 2022.

grievance through an initial review response, noting that Martinez was removed from his job based on reports that he and four other inmate employees were stealing items from the commissary. (Doc. 33 ¶¶24-28; Doc. 40 ¶¶24-28; Doc. 1-2 at 17). Martinez appealed the initial review response on February 25, 2022, asserting that the allegations of theft were inaccurate. (Doc. 33 ¶¶29-30; Doc. 40 ¶¶29-30). Mason, the prison's superintendent, denied the appeal on March 22, 2022, upholding the finding that Martinez was removed from his job based on suspicion of theft. (Doc. 33 ¶31; Doc. 40 ¶31; Doc. 1-4 at 1). Martinez appealed to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), which upheld the denial of the grievance on May 16, 2022. (Doc. 33¶¶32-33; Doc. 40 ¶¶32-33; Doc. 1-7 at 1).

## IV. DISCUSSION

Martinez's claims are filed pursuant to 42 U.S.C. §1983. Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

7

42 U.S.C. §1983. Thus, to establish a successful claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).

Martinez asserts Section 1983 claims for violation of his Fourteenth Amendment rights to due process and equal protection based on his firing from his prison commissary job. (Doc. 1). Defendants argue they are entitled to summary judgment on the due process claim because inmates do not have a protected liberty or property interest in prison employment. (Doc. 34 at 11). Defendants argue they are entitled to summary judgment on the equal protection claim because Martinez cannot establish that he was treated differently from similarly situated individuals. (*Id.* at 12-13). Defendants additionally argue that Martinez cannot establish defendant Roxby's personal involvement in the alleged civil rights violations and that plaintiff is

not entitled to damages even if his claims survive summary judgment on their merits. (*Id.* at 14-17).

Martinez argues that his due process claim should survive summary judgment because defendants did not follow required Pennsylvania Department of Corrections ("DOC") policies when they removed him from his job. (Doc. 39 at 5-7). He further argues that his equal protection claim should survive summary judgment because defendant Rossman gave him and other inmates who worked in the commissary racist nicknames, but when Martinez complained about the nickname he was fired while the other inmates who did not complain about their nicknames were not fired. (*Id.* at 8-9). The court considers defendants' arguments below. Because the court ultimately concludes that summary judgment in favor of defendants is warranted on the merits of the due process and equal protection claims, the court does not address the personal involvement and damages arguments.

A. **Due Process**

A plaintiff alleging a violation of his Fourteenth Amendment right to procedural due process must prove "(1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the defendant was

acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process." *Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir. 1989).

Prisoners do not have a protected liberty or property interest in having a job while in prison. *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989); accord *Walker v. Mathis*, 665 F. App'x 140, 143 (3d Cir. 2016); *Watson v. Sec'y Pa. Dep't of Corrs.*, 567 F. App'x 75, 78 (3d Cir. 2014). Accordingly, Martinez's due process claim fails because it alleges that defendants did not provide him due process before removing him from his prison job, but he does not have a protected liberty or property interest in the job. Summary judgment will be granted to defendants on this claim.

### B.   Equal Protection

An equal protection claim can proceed under two theories. Under the traditional theory, a plaintiff must prove "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016). Under the class-of-one theory, a plaintiff must prove that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in

treatment." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018).

Martinez's equal protection claim fails under either theory because he has not shown that he was treated differently from any similarly situated individuals. Martinez argues that he was treated differently from other individuals who were given racially derogatory nicknames by defendant Rossman because he was the only person who complained about the nickname, but his argument fails to acknowledge that he was suspected for committing theft. The relevant comparators for Martinez's equal protection claim are not other inmates who were given racially derogatory nicknames by defendant Rossman, but rather other inmates who were suspected of committing theft while working in a prison commissary job. Although Martinez asserts in conclusory fashion that the allegations of theft were false, *see* (Doc. 39 at 9 (arguing that Martinez was fired for "a manufactured accusation of theft"); he has not produced evidence that defendants knew or thought that the allegations were false. Such evidence would be necessary to show that the allegations were a pretext for firing him for an improper purpose.

Thus, to prove his equal protection claim, Martinez would need to prove that he was treated differently from other inmates who were also suspected to have committed theft while working in the prison commissary

11

solely because he complained about being called a racially derogatory nickname. Martinez has not identified any inmates in this comparator class, let alone produced any evidence that he was treated differently from those inmates. Hence, his equal protection claim fails and defendants will be granted summary judgment.

## V. CONCLUSION

For the foregoing reasons, the court will grant defendants' motion for summary judgment and close this case. An appropriate order shall issue.

Malachy E. Mannion
United States District Judge

Dated: 3/25/25
23-1056-01